

335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700

3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

## SUBCONTRACT AGREEMENT

THIS SUBCONTRACT AGREEMENT (this "Agreement"), dated as of May[___], 2024, is by and between Controlled F.O.R.C.E., Inc., an Illinois corporation, with its principal place of business located at 335 N. River Street, Suite 200, Batavia, IL 60510 ("CF or Prime Contractor") and ISS Action, Inc. a New York corporation ("ISS or Subcontractor"), with its principal place of business located at, 204 East McKenzie Street, E6, Punta Gorda, FL 33950. Collectively, CF and ISS will be referred to as the (Parties)"

  A. Prime Contractor has entered the bidding for the <u>Department of Homeland Security, U.S. Border Patrol Ground Transportation and Facility Guard Services for Arizona/California Corridor Protective Security Officer Services Blanket Purchase Agreement (BPA) 70C03C24A00000008</u>, date <u>March 22, 2024,</u> attached hereto as Exhibit A, and support of future contract dated as of <u>TBD</u>, by and between [US Border Patrol] ("Customer") and Prime Contractor, which will be provided upon receipt and issuance (the "Contracted Work").

  B. Pursuant to the BPA/Prime Contract, the Prime Contractor has agreed to provide services to the Customer as set forth in the Prime Contract for the Contracted Work.

  C. Company desires to retain Subcontractor to perform certain work as set forth on the Statement of Work set forth on Exhibit B (the "Subcontract Work"), included in the Contracted Work under the Prime Contract.

  D. Prime Contractor will perform 51 percent of required services, receiving 51 percent of compensation/income from the Customer, and Subcontractor will perform 49 percent of the required services, receiving 49 percent of compensation/income from the Customer (hereinafter "workshare split"). Specific services, and the required equipment/supplies to perform those services, will be negotiated and agreed upon in future amendments to this agreement, which also may include additional modifications or newly provided requirements pursuant to future contract support. The Parties agree to review the Scope of Work on at least an annual basis in order to adjust the respective Parties' responsibilities as may be necessary to achieve the desired workshare split.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants, and agreements hereinafter set forth, Prime Contractor and Subcontractor agree as follows:

  1. **Subcontract Work.** Subcontractor shall perform the Subcontract Work as set forth on the Statement of Work. As consideration for Subcontractor's performance of the Subcontract Work, Prime Contractor shall pay Subcontractor for services rendered according to the workshare split, the payment will be a fee equal to such portion of the BPA/Prime Contract fee that is specifically allocable to the Subcontract Work. If Prime Contractor receives a request from the Customer to modify, expand, or reduce the Subcontract Work, Prime Contractor must deliver a written change order to Subcontractor (each, a "Change Order"). If Subcontractor accepts the Change Order, Subcontractor shall comply with all directions contained in such Change Order and will be compensated. The Subcontractor shall be compensated for work completed prior to the Change Orders. In the event that the Government makes a material change to the Contracted Work (material change being defined as a change resulting in an

**EXHIBIT B**



335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700

3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

increase or decrease of more than 10% of the total work hours), the Parties further agree to review the Scope of Work and make such adjustments as may be necessary to retain the 51% - 49% workshare split. At all times, the parties shall ensure that the workshare split complies with the BPA/Prime Contract.

2. **Subcontract Payment.** Prime Contractor shall pay Subcontractor within twenty-four (24) hours following Prime Contractor's receipt of payment from Customer, provided Prime Contractor has received an invoice identifying services and supplies from the Subcontractor. Prime Contractor will approve and agree to the Subcontractors fee prior to submittal. If Prime Contractor does not receive such payment from Customer in a timely manner, Prime Contractor agrees to use commercially reasonable efforts to obtain payment from Customer. Notwithstanding the payment provided for herein, Subcontractor shall be solely liable for the payment of any and all amounts related to material, equipment, and labor used in, or in connection with, the performance of the Subcontract Work and shall provide satisfactory evidence, when requested by Prime Contractor or Customer, to verify compliance with the above requirements. Additionally, Prime Contractor will send Subcontractor the Account Summary for the payment Account with the following information; date payments received, final account balance, account withdrawals, etc

3. **Communication.** The Prime Contractor shall be responsible for all communications with the Customer concerning the BPA/Contract, and Prime Contractor shall give Subcontractor a reasonable opportunity to be present at meetings with the Customer that may concern the Subcontract Work at the Prime Contractors discretion. All contacts by the Subcontractor with the Customer pertaining to the BPA/Prime Contract will be made through the Prime Contractor. However, any communications invited by the Customer directly with the Subcontractor concerning any matter involving the BPA/ Prime Contract shall be permitted, provided further that the Prime Contractor is notified in a timely manner thereafter by the Subcontractor.

4. **Subcontractor Responsibilities.**
(a) Subcontractor Performance. Subcontractor shall comply with the terms and conditions of (i) the BPA/Prime Contract, this Agreement, and any Statement of Work providing for Subcontractor to perform any Subcontract Work on behalf of Customer and (ii) all applicable laws and regulations applicable to entities providing services of a nature similar to the Subcontract Work.

(b) Subcontractor Reports. Subcontractor acknowledges that pursuant to the Prime Contract, Contractor is required to provide certain oral and written reports to Customer related to the Contracted Work. Subcontractor agrees to provide the reports and related information to Prime Contractor on a timely, regular basis in order to allow Prime Contractor to comply with the terms of the BPA/Prime Contract, when requested by the Prime Contractor. To promote efficiency the Prime Contractor will immediately notify the Subcontractor as soon as a request for report is made. During the term of this Agreement, Subcontractor agrees to allow Prime Contractor and Customer to inspect, examine, and copy the books and account records of Subcontractor to verify amounts payable to Subcontractor under this Agreement and compliance by Subcontractor with applicable laws.



335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700

3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

(c) <u>Subcontractor Warranty</u>. Subcontractor warrants that all Subcontract Work performed pursuant to this Agreement, the BPA/Prime Contract, or a Statement of Work shall be performed in a good and workmanlike manner and will meet good security service industry standard quality requirements in the area where the Subcontract Work is performed.

(d) <u>Safety</u>. Subcontractor shall take all reasonable safety precautions with respect to its work and shall comply with all safety measures initiated by Prime Contractor and with all applicable laws, ordinances, rules, regulations, and orders of any public authority for the safety of persons or property. The Subcontractor shall immediately report to Prime Contractor any incident that occurs resulting in harm to any person or property during and related to the performance of the Subcontract Work. Subcontractor shall be solely liable for the actions of its employees, agents, subcontractors, and other representatives in their performance of the Subcontract Work.

(e) <u>Liens</u>. Subcontractor shall promptly make payment to all parties of any and all amounts due related to material, equipment, and labor used in, or in connection with the performance of the Subcontract Work and shall not permit any liens to be filed affecting any property interest held by Contractor, Operator, or any third party related to unpaid claims against Subcontractor, and the Prime Contractor shall do the same.

(f) <u>Insurance</u>. Prior to commencing the Subcontract Work, the Subcontractor, at its sole expense, shall obtain and maintain in full force, insurance in such form and for such coverage as required by the Prime Contract and as reasonably required by Prime Contractor. All required insurance policies shall include a waiver of subrogation in favor of Customer and Prime Contractor and be endorsed to show Customer and Prime Contractor as an additional insured and to provide that Customer and Prime Contractor shall be provided at least 30 days prior written notice of any cancellation, coverage reduction, or non-renewal of such policies. On request, Subcontractor shall furnish to Customer or Prime Contractor a certificate of insurance evidencing such insurance.

I. Each party shall, at its sole expense, obtain and maintain the following commercial insurances: Workers' compensation insurance as required by the laws of each state where personnel are assigned, as well as employer's liability coverage with policy limits of $5,000,000; Commercial general liability insurance with policy limits of $5,000,000; and Automobile liability insurance for all owned, hired, and non-owned commercial vehicles used in connection with this Agreement, with policy limits of $_____ bodily injury and property damage and $_____ uninsured/underinsured motorist. Additionally, the Department of Transportation requires a $5,000,000 auto excess policy. **Note: check with your carrier as to your policy limits and fill this in.**

II. Each party shall, at its sole expense, obtain and maintain the following licensure: as required by the contract.

   a. The state required transportation licensure.
   b. State required armed guard licensure.
   c. Department of Transportation Approval and Licensure.
   d. State required approvals.



335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700

3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

(g) <u>Taxes</u>. Subcontractor agrees to pay all taxes, licenses, and fees levied or assessed on Subcontractor or its personnel in connection with or incidental to the performance of this Agreement or any Statement of Work by any governmental agency and unemployment compensation insurance, , social security, or any other taxes upon the wages of Subcontractor and its personnel.

(h) <u>Key Personnel</u>. In the event that the BPA/Prime Contract requires disclosure of personnel who will provide services under the BPA/Prime Contract ("Key Personnel"), Subcontractor will comply with the requirements of the BPA/Prime Contract relative to the disclosure of and qualification of its Key Personnel. Subcontractor may not change Key Personnel except as allowed under the BPA/Prime Contract. Subcontractor shall be fully responsible to accurately and truthfully represent the qualifications of Key Personnel and shall defend, indemnify, and hold harmless Prime Contractor from any claims arising under the BPA/Prime Contract, this Agreement, or state or federal laws due to Subcontractor's misrepresentation of the qualifications of Key Personnel. Prime Contractor reserves the right to direct Subcontractor to remove and/or replace Key Personnel which violates this paragraph.

(i) <u>Training</u>. Subcontractor represents and warrants that its personnel have the required skill, experience, and qualifications to provide the services under the BPA/Prime Contract and this Agreement. Subcontractor agrees that if Prime Contractor provides training on any techniques required to carry out the services under the BPA/Prime Contract, including but not limited to the Mechanical Advantage Control Holds (M.A.C.H.™) 5.0 System ("Training"), Subcontractor shall not deviate from any such materials, techniques, or training provided by Prime Contractor. Subcontractor shall defend, indemnify, and hold harmless Prime Contractor from any and all claims, including attorneys' fees and costs, for any damage to property or personal injury, including death, to any person resulting from Subcontractor's misapplication or misuse of any Training. Training shall be documented using a Prime Contractor designated training acknowledgement form. The training acknowledgement form shall outline the date, time and topics covered during the training. The Prime Contractor's subject matter instructor, as well as the Subcontractor Instructor Staff member attending the training, shall sign acknowledging and affirming the completion of such Training. The subcontractor shall immediately remove any personnel violating this paragraph.

5. **<u>Subcontractor Tasks.</u>** In support of the BPA/Prime Contract, Subcontractor shall use its best efforts to perform the following tasks:

(a) Provide support as required to assist the Prime Contractor in meeting the objectives outlined in each Statement of Work, including making available appropriately qualified personnel to work on the Subcontractor's portion of the BPA/Prime Contract.

(b) Provide data and information concerning Subcontractor's share of the Prime Contract, including timely responses to Prime Contractor's requests for data or information needed by Prime Contractor to successfully manage the BPA/Prime Contract.



335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700

3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

(c)     Assist the Prime Contractor in providing the Customer with any additional information and data reasonably required to assist the Customer in its evaluation of Prime Contractor's ability to successfully fulfill the requirements of the Prime Contract; and

(d)     Participate with the Prime Contractor as required in any CBA's, negotiations, presentations, additional submissions, or similar events deemed necessary or advantageous by the Prime Contractor in effectively managing the Prime Contract.

(e)     Assist the Prime Contractor an Invoicing as in reviewing and providing insight on necessary changes to the Prime Contract. The Subcontractor and Prime Contractor will work together to assemble the invoice in accordance with the workshare split. The Subcontractor will have access to view invoices in the IPP system. When the funds are received, they will be divided according to the previously agreed upon split. Subcontractor shall also be entitled to reimbursement for funds expended on behalf of Prime Contractor only when services are solicited in writing from the Prime Contractor. Subcontractor shall do the same.

6.     **Indemnification.**

6.1     Each party shall defend and indemnify the other party, CBP, the US Government, and their respective trustees, officers, agents, employees, representatives, and assigns ("Indemnified Parties") against any and all claims, losses, damages, injuries, deaths, or expenses (including but not limited to reasonable attorney's fees and court costs), whether arising in equity, at common law or by statute, or under the law of contracts, torts or property, in connection with the indemnifying party's performance under this Agreement, to the extent the claims, losses, damages, injuries, deaths or expenses result from the negligence, willful misconduct or other fault (including, but not limited to, breach of contract) of that party, its employees or agents while acting within the scope of their specified duties. However, in no event will the indemnifying party's liability under this clause exceed the lesser of $1,000,000 or the total contract price paid to the indemnifying party, and the indemnifying party will in no event be liable to the Indemnified Parties for consequential damages, punitive damages, or damages arising from events beyond the indemnifying party's reasonable control (the foregoing limitation of liability only applies to the maximum extent permitted by applicable law). Moreover, to the extent that a loss is covered by applicable insurance, the Indemnified Parties shall only look to insurance and not to the indemnifying party for said loss.

(b)     **Limitation of Liability and Disclaimer**: NEITHER PARTY NOR ITS OFFICERS, DIRECTORS, EMPLOYEES, OWNERS, SUBSIDIARIES AND AFFILIATES SHALL HAVE ANY LIABILITY WITH RESPECT TO THEIR OBLIGATIONS HEREUNDER OR OTHERWISE TO THE OTHER FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF USE, LOST PROFITS, LOST SAVINGS OR OTHER FINANCIAL LOSS, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, EXCEPT THAT THERE SHALL BE NO SUCH LIMITATION ON DAMAGES IF SUBCONTRACTOR INFRINGES THE INTELLECTUAL PROPERTY RIGHTS OF COMPANY IN THE M.A.C.H. SYSTEM, DEFINED BELOW.

7.     **Relationship of the Parties.**

335 N. River Street, Ste 200  
Batavia, IL 60510  
(630) 365-1700



3133 General Hudnell Dr. Ste 116  
San Antonio, Texas 78226  
(210) 530-1100

(a) <u>Independent Contractor</u>. Subcontractor shall be an independent contractor and shall provide and furnish all labor, materials, tools, supplies, equipment, services, facilities, supervision, and administration as necessary for the proper and complete performance of the Subcontract Work. Subcontractor shall bear all costs, risks, and liabilities incurred by it arising out of or related to its performance of this Agreement.

(b) <u>No Joint Venture</u>. Nothing in this Agreement shall be deemed to constitute, create, give effect to, or otherwise recognize a joint venture, partnership, or formal business organization of any kind, other than a prime/subcontractor arrangement as described herein. Nothing herein shall be construed as providing for the sharing of profits or losses arising out of the efforts of either or both Parties.

(c) <u>Scope</u>. The scope of this Agreement is confined solely to the Prime Contract, and the provisions hereof shall have no application or effect whatsoever to work which may be performed between the Prime Contractor and the Subcontractor under any other agreement.

(d) <u>No Hindrance</u>. Notwithstanding anything to the contrary contained in this Agreement, nothing in this Agreement shall preclude either party hereto from soliciting or accepting any contract from any third party or project which the Parties have not mutually agreed to jointly pursue. Nothing in this Agreement is intended by the parties to prevent or hinder either party from carrying out its respective business or businesses for its own purposes. This Agreement relates only to the BPA/Prime Contracts with Custom and Border Patrol for CA/AZ Corridor. Prime Contractor shall give Subcontractor first right of refusal to team **with on any Custom and Border Patrol Contracts; and** nothing herein shall confer any right or impose any obligation, limitation, or restriction on either party with respect to any other **Custom Border** contracts.

8. **Term and Termination.**

<u>Term:</u> The term of and performance under this Agreement shall commence on ____, 2024 and end on the expiration of the Prime Contract and any and all extensions, currently projected to be September 15, 2029, unless otherwise terminated in accordance with this Agreement. Performance under this Agreement shall not extend beyond the termination date unless the period is extended through mutual agreement in writing and signed by both Parties. Both Parties recognize that this Agreement is subject to the Prime Contract with the US Government and that once the US Government has exercised its options to extend, this Agreement will automatically extend for the same period of time.

<u>Termination</u>. The Prime Contractor may terminate this Agreement in whole or in part for default if Subcontractor fails to properly perform in accordance with the terms and conditions stated herein. Such terminations can occur if and only if the Prime Contractor provides the Subcontractor with a written cure notice specifying the performance issues and the Subcontractor fails to cure the default within thirty (30) workdays after receiving a notice specifying the default.

The Prime Contractor may terminate this Agreement immediately in the event of:



335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700

3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

(i) Any proceeding in insolvency, dissolution, or liquidation by or against the Subcontractor; or

(ii) Any assignment of Subcontractor's assets for the benefit of creditors.

Upon termination, Subcontractor will immediately return Prime Contractor all equipment, supplies, property or other items procured by or given to Subcontractor for performance of this subcontract. Prime Contractor will do the same. In addition, Subcontractor will deliver to Prime Contractor all work completed or in process under this Agreement.

(b) <u>Termination of BPA/Prime Contract</u>. Prime Contractor shall have the right to terminate any portion of this Agreement and any Statement of Work effective immediately upon the termination of the BPA/Prime Contract, including cessation of work pursuant to a stop work order. Subcontractor agrees to honor a stop work order issued by Prime Contractor as a result of a stop work issued to the Prime Contract by the Government.

Termination of this Agreement shall not affect the rights and obligations of the Parties that accrued prior to the termination. Upon termination, the Prime shall pay the Subcontractor for all reasonable expenses and costs incurred or committed to be expended as of the effective termination date that have been funded by the US Government.

(c) <u>Customer Disapproval</u>. Prime Contractor shall have the right to terminate this Agreement or any Statement of Work effective immediately if BPA/Prime Contract is directed by Customer to utilize a subcontract source other than Subcontractor and the Prime Contractor is unable to obtain Customer approval of the Subcontractor.

(d) <u>Debarment</u>. Prime Contractor shall have the right to terminate this Agreement or any Statement of Work effective immediately if either party is debarred or suspended from U.S. federal contracting, thereby precluding participation by that party in the objective of this Agreement.

## 9. Disputes

(a) <u>Disputes involving the Government.</u>

Any dispute between or among the Government, Prime Contractor and/or Subcontractor, which is not disposed of by agreement, and which involves any question of the compliance of Subcontractor's performance with the requirements of this Agreement and/or the Prime Contract, shall be resolved in accordance with the "Disputes" clause at FAR 52.233-1 incorporated herein by reference.

(b) <u>Disputes Not involving the Government</u>

Any dispute or controversy between Prime Contractor and Subcontractor which concerns only Prime Contractor and Subcontractor or which does not involve a final decision of the Government Contracting Officer, and which cannot be resolved by mutual agreement of the Parties hereto, shall be resolved in accordance with the laws of the State of Illinois.

## 10. Confidential Information; Non-Competition; Non-Solicitation.

335 N. River Street, Ste 200  
Batavia, IL 60510  
(630) 365-1700



3133 General Hudnell Dr. Ste 116  
San Antonio, Texas 78226  
(210) 530-1100

(a) <u>Confidentiality</u>. The services provided under this Agreement may involve armed and unarmed security and training for certain operations which may be deemed classified by the United States Department of Defense and various branches of the United States Armed Forces under Master Services Agreements and/or Statements of Work ("Services") using Company's proprietary techniques, manuals, and other operations know-how ("Products") in states, territories, or countries ("Territories") which shall be designated in various in the BPA/Prime Contract and/or Statements of Work ("SOWs"), through which Subcontractor is provided access to Confidential Information, a defined below. Subcontractor shall not at any time make any use, for Subcontractor's own benefit or for the benefit of a business or entity other than Prime Contractor, of any verbal or written "Confidential Information." "Confidential Information" shall include, but not be limited to, Products, customer lists, trade secrets, sales, marketing or consignment information, vendor lists or operational resource information, forms, processes or procedures, budget and financial statements or information, files, records, documents, compilation of data, engineering drawings, computer printouts, or any other data of or pertaining to Prime Contractor, its business, customers and financial affairs, or its services not generally known within Prime Contractor's trade or the general public and which was acquired by him/her during his affiliation with Prime Contractor. The Subcontractor shall not use Confidential Information in any way not authorized by Prime Contractor or without the Primary Contractor's written consent. Subcontractor shall hold in a fiduciary capacity for the benefit of Company all Confidential Information obtained by Subcontractor and shall not communicate or divulge any such Confidential Information to any person, firm, or corporation other than Prime Contractor or persons, firms or corporations designated by Prime Contractor. Confidential Information shall be deemed to be a "trade secret" under the Illinois Trade Secrets Act. Confidential Information shall not include information which (i) was in the public domain at the time of its receipt, (ii) is or becomes generally known to the public through no fault of Subcontractor, (iii) becomes known to Subcontractor from a third party without a breach of any duty of confidentiality owed by such third party of which Subcontractor has knowledge, or (iv) is required to be disclosed by applicable law, regulations, subpoena, or other legal processes; provided, that if Subcontractor is requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand, or other similar processes) to disclose any Confidential Information, Subcontractor shall provide Prime Contractor with prompt written notice of any such request or requirement so that Prime Contractor may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. The Prime Contractor may not make use of the Subcontractors Confidential Information and the preceding paragraph shall be mutual.

(c) <u>Non-Competition/Non-Solicitation</u>. During the period of Subcontractor's business relationship with Prime Contractor and for a period of one (1) year following the termination of all SOWs for which Subcontractor is contracted by Prime Contractor for any reason whatsoever ("the Restrictive Period"), Subcontractor shall not directly or indirectly for or on behalf of him/herself or itself for any person, firm or entity: (1) solicit business from or do business with any customer of Prime Contractor for which Subcontractor dealt with or provided Services under any SOWs ("Customer") which is competitive with any products or services provided by Prime Contractor; (2) solicit for employment, hire or otherwise engage in business any persons employed by Company; (3) take any action which might divert from the Prime Contractor any business opportunity with a Customer, with the exception of the Custom and Border

335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700



3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

Protection as is a current customer of the Subcontractor; (4) use any Products in any way which are not authorized by Prime Contractor; or (5) disrupt or attempt to disrupt any relationships which Prime Contractor may have with any of its employees, suppliers, customers, lessors, banks, consultants, or other persons or entities with whom business dealings or ongoing relationships exist, nor induce any such parties to terminate or otherwise alter the manner in which such relationships are being conducted with Prime Contractor.

(d) Prime Contractor shall not directly or indirectly for or on behalf of him/herself or itself for any person, firm or entity: (1) solicit business from or do business with any customer of SubContractor for which Prime Contractor dealt with or provided Services under any SOWs ("Customer") which is competitive with any products or services provided by Prime Contractor; (2) solicit for employment, hire or otherwise engage in business any persons employed by Company; (3) take any action which might divert from the Subcontractor any business opportunity with a Customer, (4) disrupt or attempt to disrupt any relationships which Subcontractor may have with any of its employees, suppliers, customers, lessors, banks, consultants, or other persons or entities with whom business dealings or ongoing relationships exist, nor induce any such parties to terminate or otherwise alter the manner in which such relationships are being conducted with Subcontractor.

(d) M.A.C.H. System. Subcontractor may have, during the term of this Agreement, the right to use Prime Contractor's M.A.C.H. System, under its then current version (currently version 5.0) ("M.A.C.H. System") but shall have no other rights to sell, offer for sale, reproduce, display, perform, distribute copies to the public, or prepare derivative works, or authorize others to do so, in any manner. Prime Contractor retains all intellectual property rights to the M.A.C.H. System and any improvements, changes, or derivative works from same, including but not limited to any copyrights or works of authorship which are or may be conceived, developed, generated, or delivered by Subcontractor in performance of this Agreement, the BPA/Prime Contract, or any SOW, and whether or not incorporated into any deliverable.

10. **Miscellaneous.**

(a) Notice. All notices, demands and other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed to have been given when personally delivered, mailed by first class mail, return receipt requested or delivered by a nationally recognized courier service. Notices, demands, and communications to Prime Contractor or Subcontractor shall, unless another address is specified in writing in accordance herewith, be sent to the address indicated below:

If to Prime Contractor:
Controlled F.O.R.C.E., Inc.
335 North River Street, Suite 200
Batavia, IL 60510
Attention: Diana Grano

If to Subcontractor:
ISS Action
158-12 Rockaway Boulevard, Suite 200
Queens, NY 11434
Attention: Pamela Newman

or to such other address or addresses as either party may designate to the other by like notice as hereinabove set forth.

Case: 1:25-cv-07136 Document #: 1-2 Filed: 06/26/25 Page 10 of 13 PageID #:144

335 N. River Street, Ste 200  
Batavia, IL 60510  
(630) 365-1700


CONTROLLED FORCE PROFESSIONAL SERVICES

3133 General Hudnell Dr. Ste 116  
San Antonio, Texas 78226  
(210) 530-1100

(b) <u>Assignment</u>. This Agreement or any interest in this Agreement may not be transferred or assigned without the written consent of Prime Contractor, which Prime Contractor may withhold in its sole discretion. Subcontractor may not further subcontract the whole or any part of the Subcontract Work, except to an affiliate of Subcontractor, without the written consent of Prime Contractor, which Prime Contractor may withhold in its sole discretion.

(c) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument. A counterpart may be a facsimile or an electronic copy.

(d) <u>Amendment; No Waivers</u>. Any provision of this Agreement may be amended or waived if and only if such amendment or waiver is in writing and signed, in the case of an amendment, by both parties, or in the case of a waiver, by the party against whom the waiver is to be effective. No waiver by a party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, extends to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affects in any way any rights arising by virtue of any prior or subsequent occurrence. No failure or delay by a party in exercising any right, power, or privilege hereunder operates as a waiver thereof, and no single or partial exercise thereof precludes any other or further exercise thereof or the exercise of any other right, power, or privilege.

(e) <u>Exclusivity.</u> With respect to the follow-on contract for transportation, security and related services for Customs and Border Protection CA/AZ corridor, after the Prime Contract is complete, and the follow-on contract to be procured for Customs and Border Protection after the contract resulting from the currently pending procurement. Thus, in the event that Prime Contractor intends to bid on the follow-on Customs and Border Protection CA/AZ corridor, it will provide Subcontractor with advance notice of such intention and will coordinate its bid effort with Subcontractor, with the aim of receiving the prime contract and entering into a subcontract with Subcontractor mutually beneficial to the Parties, in the same fashion as this Agreement, as long as Subcontractor has not breached this Agreement.

(e) <u>Non-Exclusivity</u>. For any future Customs and Border Protection Transportation contracts awarded to Prime Contractor, Prime Contractor will give Subcontractor a right of first refusal to submit a subcontract to Prime Contractor for some or all of the work, provided that neither party restricted from pursuing other Customs and Border Protection Transportation contracts with other contractors.

(f) <u>Successors and Assigns</u>. This Agreement is binding upon and inures to the benefit of the parties and their respective successors, heirs, and permitted assigns.

(g) <u>Captions</u>. The captions in this Agreement are included for convenience of reference only and are to be ignored in the construction or interpretation hereof. All references to a Section include all subparts thereof.

(h) <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings, and negotiations, both written and oral, between the parties with respect to the subject matter of this Agreement.

335 N. River Street, Ste 200    3133 General Hudnell Dr. Ste 116
Batavia, IL 60510                                   San Antonio, Texas 78226
(630) 365-1700                                      (210) 530-1100

(i)  **Severability**. If any provision of this Agreement, or the application thereof to any person, place, or circumstance, is held by a court of competent jurisdiction to be invalid, unenforceable, or void, the remainder of this Agreement and such provisions as applied to other persons, places, and circumstances remain in force and effect, and such invalid, unenforceable, or void provisions will be deemed to be modified so as to effect the original intent of the parties as closely as possible in an acceptable manner so that, to the greatest extent possible, the transactions and other matters contemplated by this Agreement are consummated and otherwise given effect as originally contemplated with the same effect.

(j)  **Third Party Beneficiaries**. Nothing in this Agreement, express or implied, is intended to confer upon any person not a party to this Agreement any rights, remedies, obligations, or liabilities of any nature whatsoever.

(k)  **Governing Law; Venue**. This Agreement and the performance of the Subcontract Work shall be governed by the laws of the State of Illinois, and venue shall exclusively lie in the state courts of Kane County, Illinois or the United States District Court for the Northern District of Illinois; provided that, if either party brings a claim in connection with the BPA/Prime Contract, the parties agree to submit themselves to the governing law and the applicable jurisdiction and venue of the BPA/Prime Contract.

(l)  **Remedies for Breach**. In the event of a breach of any of the terms and conditions of this Agreement, Prime Contractor shall be entitled to institute and prosecute proceedings in any court of competent jurisdiction, either at law or in equity, for specific performance and/or injunctive or other relief to perform the covenants of this Agreement or prevent any violation of this Agreement by him or any other person, firm or corporation, and to obtain damages for any breach of this Agreement. The remedies provided herein shall be cumulative and in addition to any and all other remedies which either party may have at law or in equity. Any violation(s) of this Agreement shall automatically toll and suspend the period(s) for which the restrictions contained in this Agreement remain in effect, and this suspension shall be for the period(s) of time for which the violation(s) continues. In the event either party takes legal action to enforce any of the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees, court costs, and expenses incurred in connection with any action taken with respect thereto.

(m)  **Force Majeure**. Neither party shall be responsible or liable for damages or loss for any failure to comply with, or for any delay in performance of, the terms of this Agreement to the extent such failure or delay has not been contractually assumed and arises from causes beyond the control and without the fault or negligence of the performing party. Examples of these causes may include: acts of God, or of the public enemy, acts of the Government in its sovereign (and not contractual) capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, shortages of supplies or materials where such supplies or materials were unobtainable from an alternate source, acts of war or terrorism, or domestic unrest. In all such events where performance is delayed or prevented, the affected party shall nonetheless exert reasonable and diligent efforts to remove said causes and resume performance hereunder.

11. Level of Effort and Responsibility



335 N. River Street, Ste 200
Batavia, IL 60510
(630) 365-1700

3133 General Hudnell Dr. Ste 116
San Antonio, Texas 78226
(210) 530-1100

TBD

    (a)    Assignment of Personnel and Resources: TBD

[Signature Page to Follow]



335 N. River Street, Ste 200  
Batavia, IL 60510  
(630) 365-1700

3133 General Hudnell Dr. Ste 116  
San Antonio, Texas 78226  
(210) 530-1100

IN WITNESS WHEREOF, this Agreement has been executed and delivered as of the date first above written.

PRIME CONTRACTOR:     CONTROLLED F.O.R.C.E., INC.

By:     *[signature: Diana Grano]*  
Name:     DIANA GRANO  
Title:     PRESIDENT

Date: __28-May-24__

SUBCONTRACTOR:     ISS ACTION

By:     *[signature: Pamela Newman]*  
Name:     PAMELA NEWMAN  
Title:     CEO

Date: __5/28/2024__